Aaron McConnell, Appellant, v. Franklin D. Sherwood, as Sheriff, etc., Respondent.

A general assignment for the benefit of creditors authorized the assignee to " collect the notes, accounts and choses in action and the taking the part of the whole when the party of the second part (the assignee) shall deem it expedient to so do." In an action by the assignee for the conversion of a portion. of the assigned property *held*, that said provision, literally construed, simply authorized the assignee to receive payment by installments, not to satisfy a debt on payment of a portion; but even if the effect was to give power to compromise it did not invalidate the assignment.

The assignment authorized the assignee " to compromise with the creditors " of the assignor for all his debts and liabilities if in the opinion of the assignee " it would be advantageous " to the creditors and the assignor. *Held*, that the effect and intent of this provision was to delay the payment of debts and create a trust for the assignor and so it rendered the assignment void. (2 R. S. 135, § 1; id. 137, § 1.)

*Jewett* v. *Woodward* (1 Edw. Ch. 195), and *Hone* v, *Henriquez* (13 Wend. 240), distinguished.

(Argued March 4, 1881; decided March 15, 1881.)

Appeal from order of the General Term of the Supreme Court, in the fourth judicial department, made January 6, 1880, which reversed a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 19 Hun, 519.)

This action was brought by plaintiff as assignee of one Ward H. Van Housen, for the alleged taking and conversion of a stock of goods which had been levied upon by defendant as sheriff of Steuben county, under and by virtue of executions against said Van Housen.

The assignment executed by Van Housen as party of the first part assigned to plaintiff as party of the second part all of the property of the former, "except such property as is by law exempt from execution, to have and to hold the same to the said party of the second part in trust, to sell and dispose of the said personal property and estate, and collect the notes, accounts and choses in action, and the taking a part of the whole when the party of the second part shall deem it expedient to so do, then, in trust, to dispose of the proceeds of said notes, accounts, and choses in action and property in the manner following, to wit:

*First.* To pay the costs and charges of these presents and the expenses of executing the trust declared and set forth herein. To distribute and pay the remainder of the said proceeds to all the creditors of the said party of the first part for all debts and liabilities which the said party of the first part may be owing or indebted to any person whatever, provided, however, that if there is not sufficient funds for the payment of all the debts of the said party of the first part, then the said debts are to be paid *pro rata* or in proportion to their respective demands.

*Third.* That the party of the second part may have the right to compromise with the creditors of the party of the first part for all his debts and liabilities, which the party of the first part may be owing or indebted to any person, if in the opinion of the second party it would be advantageous to the party of the first part and to the creditors of the party of the first part."

*M. Rumsey Miller* for appellant. The fair meaning of the third clause of the assignment is that the assignee may have authority or permission to compromise with all the creditors for

all the debts if in his opinion it would be advantageous to the assignor and all the creditors. (*Heaton* v. *Wright*, 10 How. Pr. 83; Bouv. Law Dict., tit. "Compromise.") This authority would not render the assignment void, because it would only be of effect if all the creditors assented. (*Jewett* v. *Woodward*, 1 Edw. Ch. 195, 198; *Nicholson* v. *Leavitt*, 2 Seld. 517; *Dunham* v. *Waterman*, 17 N. Y. 17; *Raplee* v. *Stewart*, 27 id. 313; *Hone* v. *Henriques*, 13 Wend. 243; *People ex rel. Morris* v. *Randall*, 72 N. Y. 423; *Townsend* v. *Stearns*, 32 id. 214; *Ginther* v. *Richmond*, 18 Hun, 234; *Grover* v. *Wakeman*, 11 Wend. 208, 216; *Kellogg* v. *Slauson*, 1 Kern. 305; *Mann* v. *Witbeck*, 17 Barb. 388, 391, 392; *Southworth* v. *Sheldon*, 7 How. 414; *Clark* v. *Fuller*, 21 Barb. 129, 130; *Whitney* v. *Krows*, 11 id. 198, 201; *Nichols* v. *McEwen*, 21 id. 65, 66; *Townsend* v. *Stearns*, 32 N. Y. 217; *Benedict* v. *Huntington*, id. 219, 221, 222, 223.) The reservation of the surplus to the assignor after paying all the debts is not the creation of a trust for the grantor under the statute of personal uses. (2 R. S. 135, § 1, fols. 77, 93, 166; *Van Rossum* v. *Walker*, 11 Barb. 237; *Briggs* v. *Davis*, 20 N. Y. 15, 22; *Wintringham* v. *Lafoy*, 7 Cow. 738; *Ely* v. *Cook*, 18 Barb. 612, 614.) There was no reservation of right to pay future debts, or power to the assignee to pay future debts. The clause in the assignment refers only to debts existing at the time of making the assignment. (*Brainard* v. *Dunning*, 30 N. Y. 211, 214; *Benedict* v. *Huntington*, 32 id. 228; *Van Dine* v. *Willett*, 38 Barb. 319, 322.) The clause in the assignment authorizing the assignee in collecting notes, accounts, etc., belonging to the estate assigned, to "take a part for the whole when the assignee shall deem it expedient so to do," does not vitiate the assignment. (*Ginther* v. *Richmond*, 18 Hun, 231; *Bellows* v. *Patridge*, 19 Barb. 176; *Dow* v. *Platner*, 16 N. Y. 566; *Anonymous* v. *Gelpcke*, 5 Hun, 253, 254.)

*J. F. Parkhurst* for respondent. The assignment is void on its face by reason of the provision which gives the assignee the right to compromise with creditors. (Burrill on Assign-

ments, 229; *Whalen* v. *Scott*, 10 Watts, 237–44; *Nicholson* v. *Leavitt*, 6 N. Y. 520; *Barney* v. *Griffen*, 2 id. 365; *Whitney* v. *Brows*, 11 Barb. 198; *VanRossum* v. *Walker*, id. 237; *Litchfield* v. *White*, 3 Sandf. 545; *Townsend* v. *Stearns*, 32 N. Y. 215, 216; *Ogden* v. *Peters*, 21 id. 23.) Because it gives the assignee the right to give preferences. (*Wakeman* v. *Grover*, 4 Paige, 441; *Grover* v. *Wakeman*, 11 Wend. 203; Burrill on Assignments [3d ed.], 310; Bump on Fraudulent Conveyances [2d ed.], 419; Bishop on Insolvent Debtors, 193; *Hudson* v. *Maze*, 4 Ill. 578; *Smith* v. *Leavitts*, 10 Ala. 92; *Works* v. *Ellis*, 50 Barb. 512; *Keevill* v. *Donaldson*, 20 Kans. 165; *Bennett* v. *Ellison*, 1 Am. Insolvency Rep. 26; *S. C.* 23 Minn. 242; *Whitney* v. *Kelley*, 67 Me. 377; *Smith* v. *Hurst*, 10 Hare, 330; *Boardman* v. *Halliday*, 10 Paige, 227; *Barnum* v. *Hempstead*, 7 id. 568; *Van Nest* v. *Yoe et al.*, 1 Sandf. Ch. 4; *Sheldon* v. *Dodge*, 4 Den. 218; *Nichols* v. *McEwen*, 71 N. Y. 22; *Goodrich* v. *Downs*, 6 Hill, 438; *Southard* v. *Benner et al.*, 72 N. Y. 43; *Cavanaugh* v. *Beckwith*, 44 Barb. 192; *Benedict* v. *Huntington*, 32 N. Y. 223; *Nicholson* v. *Leavitt*, 2 Seld. 520; *Barney* v. *Griffen*, 2 Comst. 365; *Edgell* v. *Hart*, 9 N. Y. 219; *Mittnacht* v. *Kelley*, 3 Keyes, 407.) The assignee will not be permitted to show that he did not intend to avail himself of the authority given him in the instrument. (*Burney* v. *Griffen*, 2 Comst. 365; *Boardman* v. *Halliday*, 10 Paige, 223; *Goodrich* v. *Downs*, 6 Hill, 438.) It is contrary to the policy of the assignment law, that the assignee should be made the agent of the assignor for buying releases from the creditors for the assignor. (2 Edmonds' Statutes, 140, § 1; *Wilson* v. *Robertson*, 21 N. Y. 587; *Durham* v. *Whitehead*, id. 133; *Whitney* v. *Kelley*, 67 Me. 379; *Wyle* v. *Beals*, 1 Gray, 233, 239.) A trustee cannot deal in his own behalf in the trust funds or property. (*Holdridge* v. *Gillespie*, 2 Johns. Ch. 30; *Ackerman* v. *Emmott*, 4 Barb. 626; *Chapin* v. *Weed*, Clarke, 464.) Nor as agent for a third person. (*Hawley* v. *Cramer*, 4 Cow. 717; *Gould* v. *Gould*, 35 Barb. 270; *Colburn* v. *Morton*, 1 Abb. Ct. App. Dec. 378; *Monroe* v. *Claire*, 2 Cai. 320; *Quacken-*

*bush* v. *Leonard*, 9 Paige, 334; 3 Atk. 37; 3 P. Wms. 249; 1 Salk. 155; *Green* v. *Winter*, 1 Johns. Ch. 26; *Vanhorne* v. *Ford*, 5 id. 388.) *In re Marquand, Assignee Coffin and Lyon* (June Term, 1879), the power to compromise, vitiates the assignment because it authorizes the assignee to delay the distribution of the estate, in defiance of the court and for the benefit of the assignor. (*McCleery* v. *Allen*, 7 Neb. 21; *Nicholson* v. *Leavitt*, 2 Seld. 520; *Works* v. *Ellis*, 50 Barb. 512; *Boardman* v. *Halliday*, 10 Paige, 223; *Goodrich* v. *Downs*, 6 Hill, 438; *Barney* v. *Griffin*, 2 Comstock, 365; *Benedict* v. *Huntington*, 32 N. Y. 223; *Dunham* v. *Waterman*, 17 id. 19; *Benedict* v. *Huntington*, 32 id. 225.) These provisions vitiate the assignment, because they authorize the assignee to pay the expense of making or attempting the compromise out of the estate. (*Sewell* v. *Russell*, 2 Paige, 176; *Mead* v. *Phillips*, 1 Sandf. Ch. 83; *Planck* v. *Schermerhorn*, 3 Barb. Ch. 514; *Nichols* v. *McEwan*, 17 N. Y. 22; *Mackie* v. *Cairns*, 5 Cow. 679.) The assignment is also void because of the provision authorizing the assignee, in collecting the notes and accounts, to take "a part for the whole when he shall deem it expedient." (*In re Sansom*, N. Y. Daily Register, June 13, 1878; *Hardman* v. *Bowen*, 39 N. Y. 196; *Litchfield* v. *White*, 7 id. 438; Burrill on Assignments, 14; *Hutchinson* v. *Lord*, 1 Wis. 386; Bump on Fraudulent Conveyances, 414; *Olmstead* v. *Herrick*, 1 E. D. Smith, 310; *Metcalf* v. *Van Brunt*, 37 Barb. 621; *Woodburn* v. *Mosher*, 9 id. 255; *Dow* v. *Platner*, 16 N. Y. 562.)

DANFORTH, J. Where, upon the face of an asssignment or by proof *aliunde*, it appears to have been made with intent to hinder or delay creditors, it affords no protection to the assignee against a sheriff who seeks to enforce by execution a judgment against the debtor. This rule was applied at the Circuit and the General Term, but with different result. The trial judge held the instrument valid upon its face, and the jury found that it was made in good faith and without intention to hinder or defraud the creditors of the assignor. The General Term so

construed its provisions as to imply an illegal purpose, and the correctness of this conclusion is the question here. It turns upon certain language in the habendum clause, where, after describing the property, the assignor declares the conveyance to be in trust; first, to sell and dispose of his personal property and estate, and " collect the notes, accounts and choses in action, *and the taking a part of the whole when the party of the second part* " (the assignee) " shall deem it expedient to so do " ; and second, prescribes the distribution and payment of the proceeds to all the creditors of the assignor for all debts and liabilities which he may be owing, or, if insufficient for that purpose, " in proportion to their respective demands," but further declares that the assignee " may have the right to compromise with," those creditors, if in his opinion " it would be advantageous " to them and to the assignor. Upon these provisions the contention hinges.

The first condition, taken literally, means only that the assignee may receive payment by installments or from time to time. He is to collect the notes, etc., but he may take a " part of the whole when he deems it expedient to do so." There is no direction to compromise, none to make abatement, none to give a discharge of the whole on receiving a part. It is not that a part may be taken *for* the whole, but of the whole. A debtor cannot insist on paying his debt by portions, nor is a creditor required to receive it in that manner. Nor is payment and acceptance of a part satisfaction of the debt. The clause in question confers authority to receive fractional payments, but none to give satisfaction. If there is doubt as to its meaning, it should be solved in such a manner as to uphold rather than destroy the instrument. It was construed at General Term, however, and by the respondent here as if it conferred upon the assignee power to compromise or compound debts due the assignor by accepting part for the whole. This is not expressed, but if such is the effect, it would be no stronger than the case made in *Coyne* v. *Weaver*,* where to

* *Ante,* p. 386.

similar words was added an express "right to compound for the said chose in action," and yet the assignment was upheld. Therefore the provision in question does not taint the assignment.

A different result follows from the clause, permitting the assignee to compromise with the creditors of the assignor. To that must be applied the rule declared in *Grover* v. *Wakeman* (4 Paige, 23 ; 11 Wend. 187), and adopted in many later cases, either in words or effect, as the only safe one, and which regards every assignment operating to delay creditors, for any reason not distinctly calculated to promote their interests, as contrary to the statute of frauds and therefore void. But within that limitation a failing debtor may, however, uselessly amplify the words which transfer his estate and appropriate it to the payment of his debts ; for although he may thus excite suspicion and provoke litigation, and so bring his deed to judgment, they will not, unless inconsistent with the rights of creditors, invalidate his act. And first, it is in favor of this instrument that it provides for a surrender of all the debtor's property and its equal division. Such is the desire of the assignor, as expressed in words : " To convey all his property for the benefit of all his creditors, without any preference or priority." These are the premises. The declaration of trust, or direction for distribution of the proceeds of this property, is in furtherance of this desire. It goes to all creditors, for all debts ; and if not enough to pay in full, then *pro rata*. These are valid provisions, and if the assignor had gone no further, the object of the trust would have been carried out as one to the advantage of the beneficiaries. The debtor would have given up all that he had, to be applied without reserve to the payment of his debts. But then comes the succeeding clause, and this we cannot help seeing is a provision which at once nullifies all that has been commended. Without this it is such an instrument as is favorably regarded by a court of equity. With it the assignment comes within the principle of many cases where trusts have been " subverted as illegal," because the assignee was invested with some absolute or discretionary

power beyond the direct appropriation of the assets to the payment of debts ; or the assignor reserved to himself a power over the future direction of the trust fund, or an interest in it, to be taken care of for him by the assignee. If the assignment is valid, the trust to compromise is to be observed and regarded by the courts, and delay for that purpose in the disposition of the property or the distribution of the avails could be justified by the assignee, although required by a creditor to hasten the conversion of assets or pay over its avails. So too in negotiation for or arranging a compromise, the interest of the debtor is to be regarded and kept in view by the assignee, for it is permitted only when in his opinion such proceeding would be advantageous to the assignor. It therefore cannot be said that the assignor has devoted his property absolutely and unconditionally to the payment of his debts. If under the preceding clauses a creditor should insist that the assignor had so directed, the assignee could say there is also given an express power to compromise, *i. e.*, procure concessions from creditors, before parting with the property. If all the creditors should say, we will compromise ; give us the whole property, and we will discharge the debts, the assignee could say, that would not be advantageous to the assignor, and in either case could uphold his conduct by the very words of the instrument. But suppose the assignment did not contain this clause. The assignee could neither delay the execution of the assignment by an effort to compromise, nor consider the interest of the assignor in determining the time or manner of the execution of his trust. As it is, while placing his property beyond the reach of process, the assignor retains an interest to be provided for, delays its application to the payment of his debts by investing his trustee with power which requires time for its execution, and then prohibits its exercise, unless it is advantageous to himself. I am inclined to construe this clause as requiring a compromise if at all, with all the creditors, not permitting it with any one, or any number less than all ; but this does not meet the difficulty. There is the power to compromise ; and this

must be construed in the sense of compound, or to discharge the debts by paying only a part; its accomplishment requires the consent of the creditors and the assignee; a payment of part by the assignee and a discharge upon its acceptance by the creditors. The imposition, then, of terms and conditions, and in devising these the interest or advantage of the debtor must be considered. This is a plain departure from the power to convert and the duty to pay over the proceeds of the property when converted, without regard to the debtor, and with no inquiry save as to the existence of the debt and its amount. It is said that this compromise cannot be made unless each creditor consents; neither can it unless the assignee consents for the assignor, that is, deems it for his advantage also. But without this there may be delay justified; an effort to make a compromise would require it; and until it had been tried, if the assignee saw fit to make the effort, the court could not require him to act under the other trusts. The legal duty of the assignee under a valid trust is as plain and simple as that of an officer holding an attachment or charged with the duty of enforcing judgment by execution. However great the apparent sacrifice, and however disadvantageous to the debtor, the law permits no wish or interest of his to come between the creditor and the satisfaction of his debt, and it requires from the appointee of the debtor equal celerity and the same indifference. Here compromise, or an attempt at compromise, may precede payment, and with either is delay. It seems evident, therefore, that the intent was to delay the payment of the debts and create a trust for the use of the assignor; and either of these intents, both by the common law and the statute (2 R. S. 135, § 1; id. 137, § 1), is a fraud, in face of which the assignment cannot stand.

The cases cited by the appellant's counsel, and referred to in his interesting and impressive argument, raise no doubt as to the necessity of this conclusion. *Jewett* v. *Woodward* (1 Edw. Ch. 195) was most insisted upon. But there the question did not arise. The assignment was not attacked, but acquiesced in, and the bill was filed against the assignees for an account

and payment of the money to which the creditors were entitled under it. *Hone.* v. *Henriquez* (13 Wend. 240), where it was held that one who had become a party to the assignment by a formal assent thereto could not be heard to say that it was void; and so doubtless an assignment, however objectionable, if executed by consent of all the creditors, would be deemed valid and not void. But neither these cases, nor the reasons on which they stand, aid the plaintiff. The creditors did not consent, and one objection to the assignment is that under its provisions the assignee could delay the execution of the other trusts until he ascertained whether they would compromise. Power to compromise restrains the creditors until the attempt is made. Thus they would be hindered, and a delay in the conversion of property or the payment of debts, even for a single day, would be fatal to the assignment; and whether the delay is directed by the instrument, or justified by its provisions, or made necessary for their execution — except so far as that delay is incident to the conversion of assets and payment of debts can make no difference. (*Nicholson* v. *Leavitt*, 6 N. Y. 510; *Bingham* v. *Tillinghast*, 13 id. 215.) This illegal delay is provided for by the clause in question.

It is also urged by the appellant that the jury found by their verdict " that the assignment was not made by the assignor with the intent or for the purpose of coercing creditors into compromising the debts he owed them." This is so. But it was after the court had held the clause in question did not vitiate the assignment, and under a charge that it was not evidence of an attempt on the part of the assignor to coerce them. It was withdrawn from their consideration. ·

We think the learned trial judge erred in his construction of this clause of the assignment, and that the judgment given upon the verdict was properly reversed by the General Term. The order of that court should therefore be affirmed and judgment absolute rendered for the defendant, according to the stipulation upon which this appeal was taken.

All concur, except Rapallo, J., absent.

Order affirmed, and judgment accordingly.